ESTATE OF James H. MATTESON,
Plaintiff-Respondent-Cross-Appellant,

v.

Robert R. MATTESON, Nancy L. Matteson
and Matteson Communications,
Defendants-Appellants-Cross-Respondents-
Petitioners.

Supreme Court

*No. 2005AP2607. Oral argument November 28, 2007.
—Decided May 29, 2008.*

2008 WI 48

(Also reported in 749 N.W.2d 557.)

For the defendants-appellants-cross-respondents-petitioners there were briefs by *Stephen L. Morgan, Jennifer M. Krueger*, and *Murphy Desmond S.C.*, Madison, and oral argument by *Stephen L. Morgan*.

For the plaintiff-respondent-cross-appellant there were briefs by *Charles J. Hertel, Daniel J. Posanski*, and *Dempsey, Williamson, Kelly & Hertel, LLP*, Oshkosh, and oral argument by *Charles J. Hertel* and *Daniel J. Posanski*.

¶ 1. LOUIS B. BUTLER, JR., J. Robert Matteson, Nancy Matteson, and Matteson Communications (collectively, Robert) seek review of a published court of appeals opinion[1] that affirmed in part, reversed in part, and remanded a decision of the Fond du Lac County Circuit Court, the Honorable Robert J. Wirtz presiding, related to the dissolution of a business partnership.

¶ 2. Robert and James Matteson, who are half-brothers, owned Matteson Communications, a business that sold and serviced radios and related equipment. The dissolution of their business partnership began when James sent Robert a notice of dissolution in May 2001 which described the partnership as dissolved, subject only to winding up, but which also contained an apparent offer to allow the business to continue under certain conditions. After the Mattesons were unsuccessful in resolving a dispute over the amount due James

---

[1] *Estate of Matteson v. Matteson*, 2007 WI App 23, 298 Wis. 2d 791, 729 N.W.2d 749.

for his share of the business, James sent Robert a formal Notice of Dissolution in November 2001 demanding a wind-up of the partnership. Following James' death, the Estate of James Matteson (the Estate) filed suit against Robert in December 2001 on various grounds, seeking relief including a wind-up.

¶ 3. After a bifurcated trial, the circuit court, applying the Wis. Stat. § 178.37 (2003–04)[2] continuation statute rather than the Wis. Stat. §§ 178.32–.33(1) wind-up statutes, awarded the Estate a net judgment of $119,735.35, which reflected calculations of James' interest on the date of dissolution, business profits attributable to that share, interest, and costs. Both parties appealed.

¶ 4. The court of appeals affirmed in part, reversed in part, and remanded the cause to the circuit court with directions to modify the judgment. Specifically, the court of appeals affirmed the circuit court's application of Wisconsin's continuation, rather than wind-up, statutes; the circuit court's calculations under that statute related to application of a predissolution profit sharing ratio; and the circuit court's order requiring payment of one year's interest as a condition of stay of execution. The court of appeals, however, reversed the circuit court's rulings regarding Robert's compensation for his labor efforts.

¶ 5. Robert petitioned this court for review, raising the issues of the appropriate burdens of proof and method of calculating "profits attributable" under Wis. Stat. § 178.37, and challenging the aspect of the court's stay of execution order requiring payment of one year's worth of interest at 12 percent along with the judgment.

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

¶ 6. We conclude that the Estate, representing the retired partner, has the burden under Wis. Stat. § 178.37[3] of proving the profits attributable to the business's use of the retiring partner's right in the property, and that the circuit court erred in applying a predissolution profit-sharing ratio as the basis for post-dissolution division of profits under § 178.37. However, we conclude that the circuit court did not err in conditioning a stay of execution of judgment upon Robert's depositing with the court the judgment amount plus 12 percent interest for one year. We therefore affirm in part, reverse in part, and remand this matter to the circuit court for further proceedings consistent with this opinion.

I

¶ 7. Matteson Communications was created in 1950 by Ralph S. Matteson, the father of half-brothers James and Robert. The business involves the servicing and sales of two-way radios and related equipment. James, who joined the business in the early 1960s, was a licensed communications engineer; Robert, who joined the business in the mid-1970s, is not. When their

---

[3] Assuming that this is the correct statute to be applied. As we discuss, there are procedural concerns about this case, the record of which indicates that both the complaint in this case and James' November 12, 2001, Notice of Dissolution explicitly requested the statutory wind-up remedies under Wis. Stat. § 178.32–.33, not the Wis. Stat. § 178.37 continuation remedies which are the focus of the lower court decisions and the parties' briefing. However, we will assume, without concluding, that the Estate properly elected continuation in this case subsequent to the complaint and Notice of Dissolution, thereby abandoning its Wis. Stat. § 178.32–.33 wind-up claims in favor of Wis. Stat. § 178.37 continuation remedies.

father retired in the late 1970s, James and Robert continued the business as a partnership. For the most part, James performed the service, installation, and repair work, and Robert handled customer service and sales. The business was conducted out of James' residence, and there was no written agreement formalizing the partnership. However, from 1987 until the partnership's dissolution, the agreed upon annual profit-sharing arrangement was for James to receive 55 percent and Robert to receive 45 percent, with losses as well as profits divided on that 55/45 percent basis.

¶ 8. In July 2000, James advised Robert of his intention to leave the business and retire, but disputes arose regarding dissolution of the partnership. Negotiations were unsuccessful, and in a letter dated May 31, 2001, James' attorney advised Robert's attorney that James was providing notice of dissolution of the partnership effective as of May 31, 2001, subject only to winding up, and that James (and his wife, Darlene) would no longer be working for the business. The letter also stated that James did not want the business to shut down "because of the concern that this might cause damage to the goodwill and continuing business[,]" and offered a settlement. Upon James' request but without a wind-up, Robert transferred the business's equipment, inventory and other assets from James' residence; Robert then continued operating Matteson Communications, restructuring it as a limited liability company, and using the same business assets, product lines, inventory, bank accounts, equipment, vendors, and customers.

¶ 9. On November 12, 2001, James issued a Notice of Dissolution pursuant to Wis. Stat. § 178.26, electing that the affairs of Matteson Communications be wound

up forthwith.[4] A month later, on December 11, James died. On December 20, 2001, his estate sued Robert and Matteson Communications, seeking, in relevant part, a winding up and distribution of wind-up proceeds pursuant to Wis. Stat. § 178.32; payment of 55 percent of the profits earned between January 1, 2001, and November 12, 2001, as well as those earned during wind-up; an accounting of the business; the appointment of a receiver to manage and conduct the partnership's business during the winding up process, to liquidate assets, and to take other necessary actions; and damages and injunctive relief. The complaint also alleged breach of fiduciary duties, failure to provide partnership documents, violations of Wis. Stat. § 178.15, unjust enrichment, and bad faith. An amended complaint added Nancy Matteson, Robert's wife, as a defendant.

¶ 10. During the trial, the Estate stipulated to the dismissal of its claims for appointment of receivership and for information, but it did not dismiss its other claims, including claims for winding up and accounting. Following the trial, each side submitted post-trial briefs.[5] The Estate's post-trial brief asked the court to determine whether the business of the partnership was

---

[4] The circuit court found the dissolution date to be May 31, 2001, however, based on the earlier letter. The parties do not contest this finding or address it within the context of the formal Notice of Dissolution dated November 12, 2001.

[5] At the close of testimony on May 11, 2004, the circuit court explained to the parties that it needed additional information from the parties in the form of briefs, letter memoranda, or an accounting with

> a little more detail, what you are asking for, each of you . . . even an accounting, if you will, you know, with a ledger saying — almost like in a divorce case where you have, you know, to this person and to that person, and this set off and that set off and, then, an ultimate net figure . . . . I think that would be helpful. I think all

continued by Robert, or whether the partnership was "in a wind-up," setting forth requested remedies for each scenario. The brief also stated that the Estate had the right to choose either continuation or wind-up remedies because Matteson Communications had "continued on after it dissolved on an uninterrupted basis [and therefore the] Estate elects to claim against the continuing business of Matteson Communications as a creditor."

¶ 11. Robert's post-trial brief was in the form of a letter containing various exhibits, which Robert described as establishing that damages flowing directly from the partnership far exceeded the company's existing assets at the time of dissolution. In contrast with the Estate's brief, Robert's letter brief identified the court's request as being limited to a request for the calculations Robert provided rather than the type of legal analysis provided by the Estate's brief.[6]

¶ 12. The court issued two separate sets of findings of facts and conclusions of law. In the first set of findings and conclusions, dated August 9, 2004, the court found that the partnership dissolved on May 31, 2001, but that there had not yet been a wind-up of the

I'm suggesting, in a little bit shorter explanation, is if you could put in a succinct form, essentially, your calculation for what you feel your client's due.

[6] In its post-trial letter brief responding to the court's request and criticizing the Estate's response, Robert stated that "[p]ursuant to the Court's request, this Memorandum deals only with calculations as opposed to the 'law' and the normal briefing schedule as the Court has not requested that form of Memorandum be submitted to the Court." Rather, Robert described, the circuit court merely directed the parties at the close of testimony to forward to the court "a Letter Memorandum with attached figures indicating the parties' position regarding damages."

323

affairs of the partnership, and that in light of the partnership's continuation, Wis. Stat. § 178.37 was the applicable statute.[7] The court concluded that the Estate was entitled to $68,641, which the court describes as the value of James' 55–percent share of the partnership as of May 31, 2001, minus 55 percent of the fee for a court-ordered accountant. The court found that, pursuant to Wis. Stat. § 178.37, the Estate was additionally entitled to an election of either (1) interest on that amount, or (2) 55 percent of the business's profits from May 31, 2001, through the date such profits were paid to the Estate. In its second set of findings, the circuit court ruled, without apparent objection by the parties, that the Estate chose the second option, which it described as an election of "the 55% share of such profits that are attributable to the plaintiff."[8]

¶ 13. The circuit court retained jurisdiction over the determination of the amounts of interest and profits, noting that the parties agreed that accountant Dave

---

[7] Listed as a "finding of fact" was the court's conclusion reflecting, as we describe in this opinion, an erroneous understanding of the law, that:

> 8. Because of the continuation of business by Robert Matteson, the Estate of James Matteson is entitled to an election under Section 178.37, Wis. Stats. of either (a) interest on the value of the Partnership interest of James Matteson from May 31, 2001 as contemplated in the Findings of Fact above, or (b). . . 55% of the profits of the business of the Partnership that was continued by Robert Matteson since May 31, 200[1].

[8] During a July 30, 2004, hearing, the court elaborated:

> [A]s I understand, [the Estate] has elected to ask for that percentage share of profits, although the statute talks something a little bit differently, although it may turn out to be the same thing. It talks about the profits attributable to the use of the retired or deceased partner's right in the property of the dissolved partnership. That may be the same thing.

Haas would conduct a valuation of profits. The court also reserved a ruling on whether Robert was entitled to compensation for his work that occurred after May 31, 2001. The court then held a separate trial on these issues, during which Haas's partner, Kenneth Stephani, CPA, testified about the business's profits after May 31, 2001. He gave two figures for the profits accrued between June 1, 2001, and February 28, 2005, citing $282,886.80 as profit for that period, but also citing $344,789.29 as the "adjusted" profit prior to deductions for legal and professional fees, accountant fees, IRA expenses, and Robert's health insurance. Also in the 2001 through 2005 period, payments to Robert and Nancy for draws, compensation and health insurance benefits were calculated at $368,574.58, while the Estate received no distributions during that period.

¶ 14. In its second set of findings of fact and conclusions of law, issued on September 16, 2005, the court employed the predissolution 55/45 ratio, finding that:

> The profits of the partnership, Matteson Communications, from May 31, 2001 through the date of trial were in the sum of $282,886.80. Accordingly, the 55% share of such profits that are attributable to the plaintiff is in the amount of $155,587.00. The Court previously found that the value of the partnership interest of James Matteson as of May 31, 2001, the date of dissolution of the partnership, was in the amount of $68,641.00. Such sum is to be reduced by 55% of the accounting fees incurred to Schenck Business Solutions, which reduces the interest of James Matteson's interest in and to the partnership as of the date of dissolution considering accounting fees through the date of the trial to be in the sum of $50,292.00. Accordingly, the value of James Matteson's interest in

Matteson Communications plus his share of the profits before considering deductions therefrom is in the sum of $205,879.00.

The Estate's award was then reduced from $205,879 to $95,113.50 after the court subtracted the value of a truck awarded to James; the cost for storage of partnership records; the time spent by Robert, Nancy, and their son concluding the partnership's affairs; and 55 percent of additional fees due the court-appointed accountant.[9] The court concluded that because the Estate had filed an offer of settlement, it was also entitled under Wis. Stat. § 807.01 to interest and fees, which it calculated at $17,542.57 interest with double taxable costs in the amount of $7,079.28. The net judgment awarded to the Estate was $119,735.35.

¶ 15. On September 20, 2005, Robert moved to stay execution of the judgment, pursuant to Wis. Stat. § 808.07(2)(a).[10] The motion requested that the amount of the judgment along with "any accumulated interest to the date of deposit" be deposited with the clerk of

[9] Our review of the record revealed a number of mathematical errors in the circuit court's calculations. We asked the parties to address this issue in supplemental briefing to this court, and the parties agreed that the circuit court's calculations were erroneous, with the $95,113.50 judgment amount calculated by the circuit court not reflecting the sum of the figures provided by the court. However, the parties disagree about what the correct amount should be, focusing on different factors and discrepancies in the circuit court's calculations. We direct the circuit court to address this issue on remand.

[10] Wisconsin Stat. § 808.07(2)(a) provides:

(2) Authority of a court to grant relief pending appeal. (a) During the pendency of an appeal, a trial court or an appellate court may:

1. Stay execution or enforcement of a judgment or order;

2. Suspend, modify, restore or grant an injunction; or

court for Fond du Lac County and placed in an interest bearing account pending the outcome of the appeal. The motion suggested that the deposit of funds with the clerk should toll the accumulation of interest awarded on the judgment.

¶ 16. In response, the circuit court ordered the Estate to post a surety bond, but when the Estate was unable to procure the bond, the court instead ordered Robert to post security in a sum representing the amount of judgment plus 12 percent interest for one-year's time. The court ordered that the clerk of courts place the deposited money in an interest bearing account, with the interest accruing on that money to be deemed Robert's property.[11]

¶ 17. Robert deposited the amount ordered on November 22, 2005, and both he and the Estate appealed. In an opinion issued on January 10, 2007, the court of appeals affirmed in part, reversed in part, and remanded. *Estate of Matteson v. Matteson,* 2007 WI App 23, ¶¶ 3, 25, 298 Wis. 2d 791, 729 N.W.2d 749. The court of appeals affirmed the postdissolution application of the predissolution 55/45 ratio for profit distribution, as well as the order that Robert pay 12 percent interest for one year along with the judgment amount as a condition of the stay of execution. *Id.,* ¶¶ 22, 24. The court also affirmed the circuit court's ruling that the burden of proving profits attributable is on the continuing partner, not the retiring partner. *Id.,* ¶ 20. However, the court of appeals reversed the circuit

---

3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

[11] The specific language of these orders is discussed in detail in our analysis.

court's decision to compensate Robert only for his work to wind up the partnership rather than ordering full compensation for his labor and management services to the business. *Id.*, ¶ 3 (quoting *Lange v. Bartlett*, 121 Wis. 2d 599, 360 N.W.2d 702 (Ct. App. 1984)). The court also reversed the circuit court's decision to deduct Robert's compensation from the Estate's share, rather than from the profits of the partnership. *Id.*

¶ 18. The court of appeals directed the circuit court to modify its judgment on remand and to award Robert "compensation for his reasonable labor and management services to Matteson Communications for the time between dissolution and the date of trial" as well as ordering that that amount, along with storage expenses, be divided at a 55/45 ratio between Robert and the Estate in calculating the profits of the business. *Id.*, ¶ 25.

¶ 19. Robert filed a petition for review, and on April 17, 2007, we granted the petition. On March 25, 2008, following oral argument, we ordered supplemental briefing, and the parties responded with letter briefs filed April 4 and April 8, 2008.[12] Along with its supplemental briefing, the Estate also submitted a motion to supplement the record with certain circuit court briefs, which we granted on April 18, 2008.

II

¶ 20. Judicial actions involving the dissolution of a partnership and the liquidation of its affairs are proceedings in equity, in which circuit courts have

---

[12] We describe the reason for ordering supplemental briefing and the substance of the parties' responses in our analysis below, at *infra*, ¶¶ 26–36.

broad discretion in achieving a fair accounting between the parties involved. *See Gull v. Van Epps*, 185 Wis. 2d 609, 626–27, 517 N.W.2d 531 (Ct. App. 1994). We will uphold the circuit court's exercise of discretion if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach." *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming and Racing Ltd. P'ship*, 2004 WI 92, ¶ 21, 273 Wis. 2d 577, 682 N.W.2d 839.

¶ 21. In this case, the determination of whether the court's application of the law was reversible error requires us to examine three issues related to the dissolution of the Matteson brothers' partnership: (1) as between the retiring and remaining partner, which one has the burden under Wis. Stat. § 178.37[13] of proving the profits attributable to the business's use of the retiring partner's right in the partnership; (2) whether the ratios used for predissolution partnership profit distribution should be used as the basis for postdissolution division of profits under § 178.37; and (3) whether the circuit court erred in conditioning a stay of execution of a judgment upon Robert's depositing with the court the judgment amount plus one-year's worth of interest at 12 percent.

¶ 22. Each of these issues involves questions of statutory interpretation, as well as application of those statutes to undisputed facts, which we review de novo. *See Village of Cross Plains v. Haanstad*, 2006 WI 16, ¶ 9, 288 Wis. 2d 573, 709 N.W.2d 447. The purpose of statutory interpretation is to give the statute its "full, proper, and intended effect." *State ex rel. Kalal v. Circuit*

---

[13] Assuming that this is the correct statute to be applied.

*Court*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the language of the statute. *Id.*, ¶ 45. Statutory language is generally accorded its common, ordinary and accepted meaning, but we give legal terms of art their accepted legal meaning. *Id.*; *Wis. Citizens Concerned for Cranes & Doves v. DNR*, 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Kalal*, 271 Wis. 2d 633, ¶ 45. However, if a statute is ambiguous, we may examine extrinsic sources to ascertain its meaning. *Id.*, ¶ 50.

¶ 23. In reviewing a circuit court's determination of the value of interest or amount of profits distributable, and in reviewing discretionary stays of execution, we examine the record to determine if the circuit court reached its conclusion by a "reasoned application of the appropriate legal standard to the relevant facts in the case." *Franke v. Franke*, 2004 WI 8, ¶ 55 n. 38, 268 Wis. 2d 360, 674 N.W.2d 832 (citation omitted).

## III

¶ 24. When a partner retires or dies, the partnership is dissolved. *Lange*, 121 Wis. 2d at 601. A notice of dissolution does not, by itself, terminate a partnership. The termination of a dissolved partnership is complete only when the partnership affairs are settled through a "winding up." Wis. Stat. § 178.25(2). Absent an agreement to settle the partnership affairs without asset liquidation, winding up "involves reducing the assets to cash (liquidation), paying creditors, and distributing to partners the value of their respective interests." *First*

*Nat'l Bank of Kenosha v. Schaefer*, 91 Wis. 2d 360, 375–76, 283 N.W.2d 410 (Ct. App. 1979)(citations omitted).

¶ 25. An exiting partner has two primary options upon initiating a partnership dissolution. The exiting partner may opt either (1) (continuation) to permit the business to continue and claim his or her interest in the dissolution value as a creditor, or (2) (wind-up) to force the dissolved business to wind up and take his or her part of the proceeds. *See Lange*, 121 Wis. 2d at 601. If the exiting partner opts to force a wind-up, that partner is not a creditor, but rather shares both profits and losses after dissolution until termination, which occurs when all the partnership affairs are wound up. Such situations are governed by Wis. Stat. §§ 178.32–.33. *See also Lange*, 121 Wis. 2d at 602. However, if the exiting partner opts to permit the business to continue and elects to proceed under Wis. Stat. § 178.37, rather than force the business to wind up under Wis. Stat. §§ 178.32–.33, that partner is entitled as a creditor to an additional election under Wis. Stat. § 178.37. Specifically, the exiting partner is entitled, in addition to the value of interest at the time of dissolution, to either interest or "profits attributable":

> If any partner retires or dies, and the business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6), without any settlement of accounts as between the retired or deceased partner or the deceased partner's estate and the person or partnership continuing the business, unless otherwise agreed, the retired partner or the deceased partner's legal representative as against such persons or partnership may have the value of the retired or deceased partner's interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an

331

amount equal to the value of the retired or deceased[14] partner's interest in the dissolved partnership with interest, or, at the option of the retired partner or the deceased partner's legal representative, in lieu of interest, the profits attributable to the use of the retired or deceased partner's right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by s. 178.36(8).

Wis. Stat. § 178.37; *see also Lange*, 121 Wis. 2d at 602–03.

## A

¶ 26. The present case has arrived at our doorstep in a problematic procedural posture. The original May 31, 2001, dissolution letter from James provided notice of dissolution subject to winding up, but also appeared to consent to continuation of the business. However, the letter did not invoke Wis. Stat. § 178.37 or the continuation remedies under that statute, but rather offered settlement terms distinct from the statute's "profits attributable" or interest option.

¶ 27. In addition, any consent to continuation apparently given by James in the letter appears to have dissolved over the next few months as negotiations failed. Consequently, the complaint in this case and the November 12, 2001, Notice of Dissolution sought only a winding up under Wis. Stat. § 178.32,

---

[14] Even though, at the time this action was filed, James was both retired and deceased, we treat him as a retired partner for purposes of this case because it was his retirement which initially caused the dissolution in this case.

rather than the continuation remedies available under Wis. Stat. § 178.37.

¶ 28. Despite the language of the complaint seeking Wis. Stat. § 178.32 wind-up rather than the Wis. Stat. § 178.37 continuation remedies, and despite the similar language of the Notice of Dissolution demanding wind-up and other descriptions of this as a wind-up case,[15] the circuit court in this case proceeded as if the partnership involved a continuation, without reconciling such an assumption with the wind-up request to the contrary in the complaint and November 12, 2001, Notice of Dissolution.

¶ 29. Failing to make the required finding pursuant to Wis. Stat. § 178.37[16] that James *consented* to continuation, the court appears to have based its treat-

---

[15] In addition to the May 31, 2001, and November 12, 2001, notices of dissolution and the complaint's use of wind-up language, an October 2, 2003, response from the Estate's counsel to a motion to dismiss contained an affidavit from Attorney Charles J. Hertel with the averment that "[t]his action involves the wind-up of the affairs of Wisconsin general partners named Matteson Communications. . . . Under Chapter 178, Robert Matteson has the responsibility to wind-up the affairs of the partnership."

[16] *See First Nat'l Bank of Kenosha v. Schaefer,* 91 Wis. 2d 360, 378, 283 N.W.2d 410 (Ct. App. 1979):

> The determination of whether or not the legal representative consented to or acquiesced in the continuation of the business is a fact to be determined by the trier of fact. Since the trial court felt that sec. 178.37, Stats., applied whenever a partner died, regardless of whether there was consent to continue the business, no finding of fact was made on consent. Ordinarily, under these circumstances, we would have to remand the case back to the trial court for a finding of fact.

*See also Lange v. Bartlett,* 121 Wis. 2d 599, 601–02, 360 N.W.2d 701 (Ct. App. 1984).

ment of this case as a continuation rather than a wind-up on a lay interpretation of the word "continued." Specifically, the court found that, in the lay sense of the word, Robert had "continued" the business of the partnership, and that wind-up had failed to occur. The court's interpretation of § 178.37 "continuation" as a default statutory scheme that applies when wind-up has not yet occurred rather than something requiring the exiting partner's affirmative consent is revealed in the following July 30, 2004, explanation by the court of its rulings:

> In 2001, the partnership was dissolved. . . . What happened thereafter is that Mr. Robert Matteson continued . . . a similar business; a little bit different name or different business type, rather, formed an LLC . . . did what would be necessary to indicate that there was a different entity and then did a couple things: Continued to operate [the] business using the assets of the partnership and, also, took over trying to deal with the windup of – I think, in some respects, tried to deal with the windup of what was left of the assets that he and his brother had had as part of the partnership.

> I say "windup" even though that's sort of a technical term. I'm not convinced that this was a true dissolution and, then, a windup of the affairs. It strikes me, from the evidence, that what happened was that the business of Matteson Communications continued; continued in terms of the assets used by Mr. Robert Matteson, continued in terms of similar customer/customer base. This isn't the wholesale stopping of a business and, then, the starting of a different business. This is a continuation of a business. . . .

¶ 30. At the point at which the circuit court apparently began treating this as a Wis. Stat. § 178.37 "profits attributable" continuation case rather than a Wis. Stat. § 178.32 wind-up case, the court stated:

> I think, Mr. Hertel, that your client is entitled to their 55 percent interest as of the value — of the value of the partnership at May 31, 2001. As I understand, your client has elected to ask for that percentage share of profits, although the statute talks something a little bit differently, although it may turn out to be the same thing. It talks about the profits attributable to the use of the retired or deceased partner's right in the property of the dissolved partnership. That may be the same thing.

This transition from treating the case as a § 178.32 wind-up case to treating it as a § 178.37 "profits attributable" continuation case was set in stone by the court's ensuing findings of fact, including "finding" number eight that "[b]ecause of the continuation of business by Robert Matteson, the Estate of James Matteson is entitled to an election under Section 178.37 . . . ."

¶ 31. The circuit court's "finding" that Wis. Stat. § 178.37 is the applicable statute by virtue of the "continuation" of the business is problematic. As explained in *Lange*, the first task for a circuit court in a partnership dissolution case "is to determine what election the retiring partner made at the point of dissolution. Every partnership dissolution causes a wind-up rather than a continuation unless the outgoing partner 'consents' to a continuation." *Lange*, 121 Wis. 2d at 601–02. *See also Schaefer*, 91 Wis. 2d at 378 (explaining that whether the exiting partner consented to continuation is a fact which must be determined by the trier of fact, and where such a finding has not been made prior to application of § 178.37, remand is generally appropriate).

¶ 32. In addition to Wis. Stat. § 178.37 requiring a finding that the exiting partner consented to continuation before the statute can be applied, § 178.37 imposes different rules for distribution of profits than the

wind-up statutes, Wis. Stat. § 178.32–.33(1). *See Gull*, 185 Wis. 2d at 617–18 ("[D]ifferent rules apply depending on whether a partnership is winding up its affairs or the business is continued. . . . Section 178.37 does not apply when the partnership is continued only for the purpose of winding up its affairs.")(citations omitted); *Timmermann v. Timmermann*, 538 P.2d 1254, 1261 (Or. 1975)(explaining that an exiting partner may elect either a wind-up or, "[i]n the alternative, the withdrawing partner may allow the business to continue or accept the fact that it has continued")(citing J. Crane and A. Bromberg, *Law of Partnership* § 86(c), at 495 (1968)). *But see McDonald v. McDonald*, 68 Wis. 2d 292, 301, 228 N.W.2d 727 (1975) (suggesting that Wis. Stat. § 178.37 applies during the period between dissolution and termination, absent an agreement to the contrary).[17]

¶ 33. However, in this case, the court's transformation of this case from a wind-up case to a Wis. Stat. § 178.37 case (or, perhaps more accurately, its treat-

---

[17] *But see Schaefer*, explaining that *McDonald v. McDonald*, 68 Wis. 2d 292, 301, 228 N.W.2d 727 (1975),

> did not hold that sec. 178.37, Stats., applies regardless of whether the business is wound-up or continued. To interpret *McDonald* in this manner would be to destroy the distinction between a wind-up and a continuation of the business. *It would also destroy the distinction between secs. 178.33(1) and 178.37, Stats.* Lastly, it would eliminate the necessity for the language in sec. 178.37, Stats., which states: "When any partner retires or dies, *and the business is continued under any of the conditions set forth in s. 178.33(2)(b) or 178.36(1), (2), (3), (5) and (6)* . . . ." [Emphasis added by *Schaefer* court.] We do not believe the supreme court intended such results.

*Schaefer*, 91 Wis. 2d at 385 (first emphasis added). Furthermore, in *McDonald*, there was an agreement to continue the business after each partner's death. 68 Wis. 2d at 304–05.

ment of this case as a hybrid between the two, at times addressing continuation in terms of wind-up) was not objected to. The circuit court's findings of fact and conclusions of law and the parties' briefs consistently treat this as a Wis. Stat. § 178.37 case, with no objection raised to the altered posture of this case, despite the complaint having only sought a winding up under Wis. Stat. §§ 178.32–.33, not a § 178.37 resolution allowing for continuation.

¶ 34. Pursuant to our order asking the parties to address these issues, both parties have continued to treat this as a continuation case.[18] Nevertheless, neither party has pointed to any evidence in the record that James consented to such continuation rather than wind-up at the time of dissolution, and neither party addressed the significance of the express wind-up election in James' November 2001 Notice of Dissolution. Further, in its supplemental brief to this court, the Estate "acknowledged . . . that it did not at any time amend the Amended Complaint or otherwise withdraw its demand for a wind-up as found in Claim I of the Amended Complaint."

¶ 35. However, absent any objection by Robert, we accept the procedural posture of this action as an elected continuation. In the Estate's post-trial brief to the circuit court, a copy of which was recently added to the appellate record of this case, the following statement was also made: "The Estate elects to claim against the continuing business of Matteson Communications as a creditor." In his letter brief to this court,

---

[18] The parties appear to remain confused about continuation being something a court "finds" after a business takes too long to wind up, rather than continuation being something the exiting party must clearly consent to and elect in lieu of wind-up at the time of dissolution.

Robert similarly argued that James' personal representative consented to continue the business, and had elected to proceed under Wis. Stat. § 178.37. Absent any objection by Robert, we assume, without concluding, that the Estate's post-trial brief statement may suffice as an election of continuation rather than wind-up as required by § 178.37 (and as explained by *Lange*, 121 Wis. 2d at 601–02, and *Schaefer*, 91 Wis. 2d at 378, 385).

¶ 36. We also find it necessary to treat this as a continuation case because neither party objected to the circuit court's conclusion that this is a Wis. Stat. § 178.37 continuation case rather than a wind-up case, and because since then both parties have consistently briefed and argued this matter pursuant to § 178.37. We appreciate the Estate's explanation in its letter brief to this court that:

> In retrospect, it appears to counsel for the Estate that none of the parties understood the implications of *Lange* when the decision to dissolve Matteson Communications was made. As a consequence, the parties may have utilized language and filed pleadings without full appreciation of the implication of their actions. It is submitted that consistent with the adage that "actions speak louder than words" that the parties through their actions evidence an intention if not agreement that the business of the partnership was to be continued.

We will therefore treat this case as a § 178.37 case.

B

¶ 37. Under Wis. Stat. § 178.37, if the exiting partner has elected continuation, that partner has an additional election. In addition to the value of the retired partner's interest in the property at the date of the dissolution, the exiting partner is also entitled to an

election of either interest on that value, or in lieu of that interest, postdissolution profits attributable to the use of his share in the partnership. Regardless of whether the exiting partner elects, in addition to the dissolution date value, interest on that value or "profits attributable," § 178.37 provides that the exiting partner receives the elected sum "as an ordinary creditor," with creditors of the dissolved partnership having priority over an exiting partner's claims under the statute, as provided by Wis. Stat. § 178.36(8).[19] As the court of appeals explained in *Lange*, profits elected under § 178.37 are different from wind-up profits "because, in a continuation, the outgoing partner is not responsible for the debts of the continuing partnership. The outgoing partner, instead, takes as a creditor." *Lange*, 121 Wis. 2d at 602–03 (citations omitted).

¶ 38. In this case, we assume that the Estate exercised its statutory options to select the second continuation option rather than court-ordered wind-up or the first continuation option, thereby entitling it to both the value of James' interest at the time of dissolution and the profits attributable to that interest.[20]

---

[19] Wisconsin Stat. § 178.36(8) provides:

If the business of a partnership after dissolution is continued under any conditions set forth in this section, the creditors of the dissolved partnership, as against the separate creditors of the retiring or deceased partner or the representative of the deceased partner, have a prior right to any claim of the retired partner or the representative of the deceased partner against the person or partnership continuing the business, on account of the retired or deceased partner's interest in the dissolved partnership or on account of any consideration promised for such interest or for the retired or deceased partner's right in partnership property.

[20] The record does not establish when any such election took place, and as noted earlier, the Notice for Dissolution demanded winding up the partnership.

The only contested issues related to Wis. Stat. § 178.37 that require resolution pertain to how to calculate "profits attributable," and whose burden it is to establish that amount.

¶ 39. For the below reasons, we conclude that the burden of proof is on the Estate, representing the retiring partner, to determine the amount of profits attributable to the use of James' right in the property, and to establish that the calculations employed by both the circuit court and the court of appeals to ascertain those profits attributable were flawed.

1

¶ 40. We first address the burden of proof issue. The circuit court and court of appeals in this case both held that Robert, as the continuing partner, had the burden of proving the value of the profits attributable to the use of James' rights in the business after dissolution. Robert argues that the circuit court and the court of appeals were both wrong on this point because the burden is on the retiring partner, not the continuing partner, to prove profits attributable.[21] We agree.

---

[21] The Estate proposes that we not reach the burden of proof issue at all, describing the issue as moot, because the parties agreed to stipulate to calculations from a neutral accountant. However, the court-appointed accountant was "engaged to calculate the amount of profits of the business continued by Robert Matteson after May 31, 2001," not to calculate "profits attributable" within the meaning of Wis. Stat. § 178.37. Furthermore, as the Estate acknowledges, a matter is moot if its determination cannot have a practical effect on an existing controversy. *State v. Leitner*, 2002 WI 77, ¶ 13, 253 Wis. 2d 449, 646 N.W.2d 341. In this case, because we are remanding this

¶ 41. Wisconsin is a Uniform Partnership Act (UPA) state, with Wis. Stat. § 178.37 substantially identical to Section 42 of the Revised Uniform Partnership Act, which provides:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section 41 (1, 2, 3, 5, 6), or section 38(2b) without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section 41(8) of this act.

Rev. Unif. P'ship Act § 42, 6–II U.L.A. 593 (2001).

██

¶ 42. Because Wis. Stat. § 178.37 is a Uniform Partnership Act statute, we initially look there for guidance. *See Skaar v. DOR*, 61 Wis. 2d 93, 98, 211 N.W.2d 642 (1973). Wisconsin Stat. § 178.02(4) provides that "[t]his chapter shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it." The purpose of

---

action for a new determination of profits attributable, the determination of which party bears the burden of proving profits attributable will necessarily have an effect on this controversy.

uniform laws is to establish both uniformity of statutory law and uniformity of case law construing the statutes, ensuring certainty and guidance to litigants who rely on the courts to interpret uniform statutes in a predictable and consistent manner. *See M.J. Wallrich Land & Lumber Co. v. Ebenreiter,* 216 Wis. 140, 143, 256 N.W. 773 (1934).

¶ 43. We note that other UPA states have concluded that the burden of proof is on the exiting partner to prove profits attributable.[22] *See e.g., Cadwalader, Wickersham & Taft v. Beasley,* 728 So. 2d 253, 258 (Fla. Dist. Ct. App. 1998)("As the record does not clarify what portion, if any, of the postdissolution profits earned on services . . . was attributable to Beasley, we find that Beasley failed to carry his burden of showing what the quantum meruit value of his services was after he left the firm."); *Hughes v. Aycock,* 598 S.W.2d 370, 376–77 (Tex. App. 1980)("[T]o recover profits in lieu of interest under Section 42, [the exiting partner] was required to prove by competent evidence 'the profits attributable to the use of his right in the property of the dissolved partnership,'" which requires proving not only the profits the partnership earned after dissolution, but also "what portion of those profits are directly attributable to his capital investment.")(citations omitted). *See*

---

[22] In other contexts as well, courts in UPA states have held that the party seeking an accounting, or the dissolution value of his or her interest, has the burden of proof. *See, e.g., Thigpen v. Aldred,* 165 S.E. 27, 28 (Ga. 1932)(in a case addressing a petition for accounting and settlement of a partnership, the Georgia Supreme Court ruled that the plaintiff carried the burden imposed by law of proving his right to recover by a preponderance of the evidence); *Palmer v. Manville,* 228 N.W. 20, 21 (Iowa 1929)(involving an action in equity for an accounting between a contractor and real estate operator).

*also* 2 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 7.13(f), at 7:211 (Supp. 2006) ("When profits have been elected, the retiree must prove what profits were earned after dissolution, as well as what profits were attributable to the use of partnership assets as distinguished from the services of the partners.")(citations omitted). Placing the burden on the exiting partner comports with the UPA election option's purpose being in part to hasten settlement of accounts. *See McDonald*, 68 Wis. 2d at 302.

¶ 44. *Bader v. Cox*, 701 S.W.2d 677 (Tex. App. 1985), another case affirming that the burden is on the exiting partner to establish profits attributable, is of particular relevance to our burden of proof discussion. In *Bader*, the widow of a deceased partner sought to recover profits of the partnership's business, and the court placed the burden on the widow to prove profits attributable, concluding that it is the exiting partner who "must prove, by competent evidence, the profits gained after dissolution and prior to termination which are attributable to the use of decedent's right in the property of the dissolved partnership." *Id.* at 684.

¶ 45. The lower courts in the present case seemed to base their decisions to switch the burden of proof from the exiting to the remaining partner on policy grounds unsupported by precedent, with the court of appeals even acknowledging that "*[t]hough other jurisdictions have decided differently*, it is clear to us that the continuing partner, who runs the business and has access to all of its records, is the one who should have to show how profits are earned and to what they are attributable." *Estate of Matteson*, 298 Wis. 2d 791, ¶ 20 (emphasis added).

¶ 46. Echoing the lower courts, the Estate argues that from a public policy perspective it makes more

343

sense to place the onus on the continuing partner to prove the postdissolution profits attributable, with that partner being in a better position to access the business's records than the exiting partner, who might have to resort to litigation. The Estate also argues that the remaining partner is better positioned to assess how the exiting partner's assets are being used for purposes of calculating profits attributable to those assets.

¶ 47. We acknowledge that these policy arguments have merit. However, although it is particularly the case where, as here, the retiring partner died after leaving the partnership, that the continuing partner has greater access to the business's records as the one running the business, this does not necessitate a general rule placing the burden on the continuing partner to prove profits attributable. This is so for a number of reasons.

¶ 48. To begin with, one of the underlying policies of the Uniform Partnership Act is to hasten the settlement and the orderly winding up of dissolved partnerships. *McDonald*, 68 Wis. 2d at 302. It is in the interest of both parties to settle this promptly.

¶ 49. In addition, the burden of proof is generally on the party invoking the judicial process in its favor. *Richards v. First Union Sec., Inc.*, 2006 WI 55, ¶ 17, 290 Wis. 2d 620, 714 N.W.2d 913. Here, the circuit court found that it was the Estate's choice to elect the "profits attributable" distribution rather than a statutory rate of interest.

¶ 50. As for the competing policy arguments for and against placing the burden on the partner with less immediate access to the business records, we have explained that although the party with exclusive access to facts "should ordinarily bear the burden of proof on that issue," and this is a relevant factor in determining burden of proof, this factor should not be overempha-

344

sized because one must often plead and prove matters as to which one's adversary has superior access to the evidence, but "with liberal discovery, parties are placed on more equal footing with regard to evidence." *Acuity Mut. Ins. Co. v. Olivas*, 2007 WI 12, ¶ 43, 298 Wis. 2d 640, 726 N.W.2d 258 (citations omitted).

¶ 51. Finally, this case presents a unique fact situation in that it involves a retiring partner who also died shortly after retiring. We do not deem it appropriate to create a new rule contrary to that adopted in other Uniform Partnership Act states as a response to the unique facts of this case.

¶ 52. Consequently, we will follow the path taken by other UPA states that have interpreted their corresponding statutes as placing the burden of proof on the exiting partner.

2

¶ 53. We next address the appropriate methodology for calculating the profits attributable, and whether the lower courts erred in concluding that the partnerships' predissolution distribution ratio of 55/45 is the appropriate measure for a postdissolution Wis. Stat. § 178.37 calculation of profits attributable to the retired partner's right in the property.

¶ 54. Robert argues that the 55/45 ratio was no longer an appropriate measure of profit division once James exited the partnership, because James ceased actively contributing to the business and no longer faced the risk of joint and several liability for the debts of the partnership. Robert further argues that because a business partnership requires the participation of two or more persons, when one partner forces dissolution by

retiring, that former partner relinquishes the right to profit distribution according to agreed upon predissolution percentages.

¶ 55. Robert also points out the sizable discrepancy between the $14,000 that would have been awarded the Estate had it opted for the interest option of Wis. Stat. § 178.37, and the $155,587 over and above his $68,641 investment which the circuit court awarded to it under the "profits attributable" option, after employing the predissolution 55/45 profit-sharing ratio. This result, Robert suggests, cannot reflect the purpose of the Uniform Partnership Act.

¶ 56. The Estate argues that the division of profits after dissolution must be based on the same profit-sharing distribution which the partners employed up to the time of dissolution because a partnership is not terminated at dissolution, but continues until the exiting partner receives his or her original percentage interest in the partnership during the wind-up process, citing *Lange*, 121 Wis. 2d at 601–02. Such continued application of the agreed upon profit-sharing percentages helps prevent remaining partners from prolonging the wind-up while using the exiting partner's assets to conduct business, and helps limit the amount a minority-interest continuing partner such as Robert can unfairly amass, the Estate argues.

¶ 57. While Robert's arguments might make sense in a wind-up context,[23] the wind-up incentive rationale does not apply the same way in a Wis. Stat. § 178.37 continuation case. In continuation cases, UPA states have concluded that exiting partners are *not*

[23] *See Schaefer*, 91 Wis. 2d at 381 ("If a partnership is seasonably wound up after dissolution, profits and losses during the liquidation are shared by the partners in proportion to their predissolution ratios, unless they have agreed otherwise.").

346

entitled to a full predissolution profit share after disso-
lution because the predissolution profit-sharing ratio
was predicated in part on that partner's contribution of
services, which ended upon dissolution, while after
dissolution, the exiting partner is compensated for the
use of its investment in the partnership. *See Bromberg
and Ribstein on Partnership*, § 7.13(f), at 7:210.

¶ 58. Consistent with the approach of other UPA
states, we conclude that a proper determination of the
profits attributable to James' interest requires more
than simply dividing the profits according to the 55/45
percentages agreed upon for sharing profits during the
predissolution active partnership. In postdissolution
situations involving a retired partner, the situation has
changed; the retiring partner no longer takes on the
same shared risks, such as liability, and therefore should
not be rewarded the profits in the same ratio as if he
were still actively contributing to the partnership.

¶ 59. As the *Bader* court explained, using predis-
solution percentages to calculate the postdissolution
profits attributable is a flawed approach. The demon-
stration of which portion of profits is directly attribut-
able to an exiting partner's investments "requires more
than simply multiplying the percentage figure repre-
senting [the exiting partner's] contribution to capital by
the total profits for the period in question." *Bader*, 701
S.W.2d at 684 (quoting *Hughes*, 598 S.W.2d at 377).
Instead, the *Bader* court explained, "the portion of the
profits attributable to the [exiting partner's] ownership
interest must be distinguished from the portion attrib-
utable to the skill, time, efforts, and diligence of the
remaining partners." *Id.*

¶ 60. Wisconsin Stat. § 178.37 explicitly sets forth
a different methodology for postdissolution profit allo-
cation than the predissolution profit-sharing agree-

347

ment. The statute treats the exiting partner as an ordinary creditor after dissolution, and not as a partner whose profits attributable remain subject to ongoing 55/45 division.

¶ 61. While both lower courts in this case erred in applying the predissolution 55/45 profit ratio to a calculation of postdissolution profits attributable, the court of appeals was correct in charging the circuit court with additionally erring by refusing to compensate Robert for his substantial labor and management services in running the business, not just his efforts in winding it up. As the court explained in *Lange*, 121 Wis. 2d at 606, such deductions to compensate the remaining partner for labor and management services should be made, and should be calculated before the final accounting of profits due the exiting partner.

¶ 62. We agree with the court of appeals that Wis. Stat. § 178.15(6) is not applicable in this case.[24] In *Gull*, 185 Wis. 2d at 625, the court of appeals explained that § 178.15(6) applies to the extra compensation accorded to surviving partners when a partnership is dissolved due to the death of a partner, which is not the case here. James' death did not occur until six months after the dissolution, which resulted from his retirement, not death.

¶ 63. The appropriate approach to the calculation of "profits attributable" has been set forth by decisions

---

[24] Wisconsin Stat. § 178.15(6) provides that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs."

in other UPA states which have already addressed this issue. In such states, courts have determined that:

> The first step in computing a retiree's or estate's postdissolution profits or interest is to determine the extent of the former partner's investment . . . [with] the basis of compensation . . . not [] limited to the amount . . . [of] the partner's account on the books of the partnership when that amount does not reflect profits that have not been closed out to the capital accounts, appreciation in the value of partnership assets, or goodwill. It has been held that the relevant percentage is determined by comparing the partner's capital to net assets rather than to total assets . . . .

> When profits have been elected, the retiree must prove what profits were earned after dissolution, as well as what profits were attributable to the use of partnership assets as distinguished from the services of the partners. The latter is often particularly difficult. The retiree or estate might proceed by comparing both earnings and work performed by the partners (and any employees hired to replace the outgoing partner or estate) before and after dissolution. The profits or interest should generally be computed on the basis of the partner's percentage investment in the firm . . . .

*Bromberg and Ribstein on Partnership* § 7.13(f), at 7:211–12 (citations omitted).

¶ 64. Consequently, in this case, the burden is on the Estate to provide an accounting, which should start with the $68,641 that the parties agree represents James' right in the property as of the dissolution date. The accounting should then add to that starting figure the net postdissolution \profit attributable to the $68,641. Although we do not provide an exact formula for the determination of "profits attributable," which is a fact-specific determination, the accounting of profits attributable upon remand should be made by establish-

ing (1) the gross profits of the business from May 31, 2001, through the date of final accounting;[25] (2) the net profit, calculated by subtracting, for example, deductions for borrowed funds and reasonable labor costs and expenditures (including health insurance, pension payments, and reasonable compensation to Robert or others working for the business, both for their efforts in maintaining the business and in their efforts related to this lawsuit); and (3) in what amount those net profits following dissolution are attributable to James' dissolution date $68,641 right in the business, as opposed to profits generated by Robert's or others' efforts or capital. This accounting on remand should trace the profits to their source, and provide a clear record of such tracing, and must reflect an actual accounting, not a flat 55/45 division.

¶ 65. As a final note, we address a dispute about whether James' $68,641 right in the business as of the dissolution date, to which profits attributable are traced, includes intangible assets such as goodwill. With respect to Wis. Stat. § 178.37, we adopt the analysis of the UPA provided by the California court of appeals, which has explained that leasehold interests, permits to do business, and the goodwill of partnerships are as much assets as tangible property, and that goodwill "is property recognized and protected by the law as such . . . . How far its value might be affected by the competition of the retiring partner is an element, of course, to be taken into consideration in fixing of such value." *Ruppe v. Utter*, 243 P. 715, 717 (Cal. Ct. App. 1925). *See also Schaefer*, 91 Wis. 2d at 382 (The calcu-

---

[25] *See Lange,* 121 Wis. 2d at 603 ("The right to a share of the profits exists only until the final accounting has been made.").

lation of a deceased partner's dissolution date value in the business includes "asset appreciation and good will up to that date, plus interest or profits from the date of death to final settlement. The 'profits,' however, do not include asset appreciation.").

¶ 66. In this case, the circuit court took into account the value of goodwill and other intangible assets as required by Wis. Stat. § 178.37; the partnership property which contributed to the business's success after dissolution was described by the circuit court as including "not only the tangible assets but also the goodwill, reputation prior to dissolution that have contributed to the success of, in essence, the business."

## IV

¶ 67. Finally, we are asked to determine whether the circuit court erred in ordering Robert to post security in the amount of judgment plus 12 percent interest for one year's time, with any further interest accruing on the deposited money to be deemed Robert's property, as a condition of the stay of execution.

¶ 68. A court has broad discretionary authority under Wis. Stat. § 808.07(2)(a)3. to issue a stay of execution of judgment. Section 808.07(2)(a)3. provides that a circuit court may "make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered" pending appeal.

¶ 69. In *Management Computer Services, Inc., v. Hawkins, Ash, Baptie & Co.*, 224 Wis. 2d 312, 330, 592 N.W.2d 279 (Ct. App. 1998), the court of appeals affirmed the broad level of discretion a circuit court has under Wis. Stat. § 808.07(2)(a)3. in tailoring a stay of

execution to a particular case. In that case, as in this one, the court issued a stay of execution requiring deposit of money with the court, and requiring the court to place that money into an interest-bearing account. *Id.* at 330–31.[26] The court of appeals in *Management Computer Services* explained that "one goal of statutory interest mandates is to compensate prevailing parties for the time-value of their money." *Id.* at 331. That goal is effectuated by granting courts broad discretion in conditioning stays of execution on such terms as the courts deem appropriate. *Id.* at 330.

¶ 70. The procedural history of the contested order pertaining to payment of interest in the present case is as follows. First, in an order dated November 1, 2005, in accordance with its authority under Wis. Stat. § 808.07 to grant stays of execution, the circuit court granted Robert's request for such a stay. As a condition of the stay of execution, the court ordered the Estate to post a surety bond, while allowing that "[i]n the event that the [Estate] is unable to procure a surety bond as described in the preceding paragraph, the Court shall again consider [Robert's] motion and shall require [Robert] to post adequate security pending the appeal." After the Estate was unable to procure the bond, the circuit court issued a new order on November 10, 2005, with the following provisions:

1. Provided that [Robert] post[s] the security as described in the following paragraph, the execution of the judgment entered in the above-referenced matter is stayed pending appeal.

---

[26] Unlike this case, however, the court in *Management Computer Services, Inc., v. Hawkins, Ash, Baptie & Co.*, 224 Wis. 2d 312, 330, 592 N.W.2d 279 (Ct. App. 1998), did not require payment of interest along with payment of judgment.

2. [Robert] shall post with the Fond du Lac County Clerk of Court the amount of $134,400, which sum represents the approximate amount of the judgment plus interest 12% for one year's time. The Clerk of Court for Fond du Lac County, Wisconsin is directed to invest such sum in an interest bearing account at a financial institution doing business in Fond du Lac County, Wisconsin. The Court finds that interest on the judgment at 12% per annum protects the respective interests of both [the Estate] and [Robert] during the pendency of the appeal.

3. The Court reserves the right to amend this order in the event that the duration of the appeal is in excess of 12 month[s] from the date of this Order.

¶ 71. Another order was issued on November 14, 2005. This order was identical to the November 10 order except that the following sentence was added to the end of paragraph 2: "All interest accumulating on the deposited funds at the market rate of interest shall be deemed the property of [Robert]." The funds were deposited with the clerk on November 22, 2005.

¶ 72. Despite the language in the November 14, 2005, order deeming interest accumulating on the deposited funds to belong to Robert, Robert argues that the circuit court's stay of execution orders violated Wis. Stat. § 807.01(4)[27] in ordering him to pay even a year's worth of interest in advance. He cites *Management Computer Services* and *Downey v. Bradley Center Corp.*,

---

[27] Wisconsin Stat. § 807.01, addressing settlement offers, provides in relevant part:

(1) After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. . . .

. . . .

188 Wis. 2d 435, 524 N.W.2d 915 (Ct. App. 1994), for the rule that, under § 807.01(4)'s provision that post-judgment interest only accrues until the judgment is "paid," such payment must be recognized as having been made when it is deposited with the clerk of courts. He argues that the circuit court erred in requiring him to pay a year's worth of interest in advance, which in effect fails to honor his payment to the clerk, which halts interest accrual under § 807.01(4).

¶ 73. Robert also argues that the court of appeals in this case erroneously distinguished *Downey* as a case involving interest accrual pursuant to Wis. Stat. § 815.05(8), not Wis. Stat. § 807.01(4). He contends that the language of both statutes limits accrual of interest until judgment is paid.

¶ 74. We agree that Wis. Stat. § 807.01(4) is the applicable statute, in that it applies to the context of proposed and rejected settlement offers, as occurred in this case. In contrast, Wis. Stat. § 815.05(8) by its express language does not apply when § 807.01(4) is in effect.

¶ 75. Although Wis. Stat. § 807.01(4) is the statute which applies to this case, Wis. Stat. §§ 815.05(8) and 807.01(4) use similar language reflecting that the

---

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

(5) Subsections (1) to (4) apply to offers which may be made by any party to any other party who demands a judgment or setoff against the offering party.

accrual of interest tolls upon the payment of judgment. Section 807.01(4) describes a party's right in some situations to interest "at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid," while § 815.05(8) similarly describes a party's right in other situations to interest "at the rate of 12% per year on the amount recovered from the date of the entry of the judgment until it is paid." As such, we examine *Downey*'s interpretation of the similar language in § 815.05(8) to interpret what § 807.01(4) means by the language, "until the amount is paid."

¶ 76. In *Downey*, the court of appeals held that payment of the judgment to the clerk of courts tolls further accrual of interest, with the clerk standing in for the winning party as the receiver of payment for purposes of tolling interest accrual. *Downey*, 188 Wis. 2d at 448–49. The purpose of this rule, the court explained, is to motivate the debtor to pay the judgment. *Id.* at 449.

¶ 77. The Estate suggests that *Downey* should be formally overruled because it has already been "silently overruled" by this court in *Weber v. White*, 2004 WI 63, 272 Wis. 2d 121, 681 N.W.2d 137, as recognized by the court of appeals in *Wisconsin Central Farms, Inc. v. Heartland Agricultural Marketing, Inc.*, 2006 WI App 199, ¶ 44, 296 Wis. 2d 779, 724 N.W.2d 364. We conclude that any perceived conflict between *Downey* and *Weber* is overstated in *Wisconsin Central Farms*.

¶ 78. The conflict that the court of appeals in *Wisconsin Central Farms* perceived between *Downey* and *Weber* appears to be as follows: while *Downey* provides that interest is tolled as a result of paying a judgment to a clerk of courts, in *Weber*, this court held that a circuit court may exercise its discretion to deny a request to stay an execution in order to avoid paying interest pending appeal.

¶ 79. The tension between the cases is merely that of different results by courts similarly exercising their discretion. *Downey* recognizes that in some cases, executions may be stayed, tolling interest, and in *Weber*, we recognized that in other cases, a court may decline such a request for stay. There is no substantial conflict in these differing results that calls into question the precedential value of either case. Whether a stay of execution may be granted is an exercise of discretion subject to the four-factor test of *Scullion v. Wisconsin Power & Light Co.*, 2001 WI App 120, ¶ 31, 237 Wis. 2d 498, 614 N.W.2d 565,[28] but once a stay of execution is granted, the determination of whether payment of a judgment tolls interest remains governed by the rule of law correctly articulated by *Downey*.

¶ 80. In this case, the parties disagree about the terms of the stay, not the circuit court's decision to grant one. As such, *Downey*, not *Weber* or *Scullion*, applies.

¶ 81. Although we agree with Robert that *Downey* establishes that interest stops accruing upon payment of a judgment to the court, we decline to adopt the application of the rule he urges in this case. Robert

---

[28] In *Weber*, this court described the four-factor test of *Scullion v. Wisconsin Power & Light Co.*, 2001 WI App 120, 237 Wis. 2d 498, 614 N.W.2d 565, as requiring circuit courts to decide whether to grant a stay of a money judgment pending appeal on the bases of four factors: (1) the issues appealed and likelihood of success on the issues; (2) the need to ensure the collectibility of the judgment and accumulated interest if the appellant is unsuccessful on appeal; (3) the interest of the appellant; and (4) potential harm to the respondent if the judgment is not paid until completion of the appeal. *Weber v. White*, 2004 WI 63, ¶ 35, 272 Wis. 2d 121, 681 N.W.2d 137.

argues that the court's stay condition in this case violated Wis. Stat. § 807.01(4)'s prohibition of interest accruing past payment of judgment because it included a requirement of paying one-year's worth of interest.

¶ 82. We reject this argument. The interest ordered by the circuit court, coming within the context of a stay condition, fell within the court's discretion. The court ordered an amount equal to one-year's interest to be paid along with an amount equal to the judgment as a condition of granting the stay, but once the judgment was paid, the court's order did not require ongoing, further accrual of interest. Further, it is clear from the court's subsequent order that any interest accruing after the deposit of the judgment and the conditional interest payment tied to the stay would be returned to Robert, not given to the Estate.

¶ 83. At oral argument, the Estate appeared to argue that all the interest that accrues on the deposited funds should go to it, not Robert, despite the circuit court's explicit November 14, 2005, order allowing Robert to keep any interest that accrued on the deposited funds after the initial deposit.

¶ 84. However, the circuit court was within its discretion and in compliance with statutory mandates to order that interest accruing on the deposited funds past the date of deposit should revert to Robert, as well as being within its discretion in issuing the stay of execution with payment of one year's worth of interest along with judgment. The two orders, viewed together, are consistent with important policy goals of securing funds for additional statutory interest that may accrue if the Estate wins on appeal, while also protecting Robert's time-value of the money interest in the judg-

ment deposited with the court. *See Management Computer Servs.*, 224 Wis. 2d at 330.

¶ 85. Although we agree with Robert that interest accrues only until judgment is paid to the clerk of courts, we conclude that the circuit court did not err in ordering Robert to deposit with the court the judgment amount plus 12 percent interest for one year, particularly in light of its later order protecting Robert's right to further interest that accrues on the deposited money.

V

¶ 86. In sum, we conclude that, assuming a Wis. Stat. § 178.37 "profits attributable" election was made, the Estate, representing the retired partner, James, has the burden under Wis. Stat. § 178.37 of proving the profits attributable to the business's use of James' right in the business, and that the circuit court erred in applying a predissolution profit-sharing ratio as the basis for postdissolution division of profits under § 178.37. However, we conclude that the circuit court did not err in conditioning a stay of execution of judgment upon Robert's depositing with the court the judgment amount plus 12–percent interest for one year.

*By the Court.*— The decision of the court of appeals is affirmed in part, reversed in part, and the cause remanded to the circuit court for proceedings consistent with this opinion.