COURT OF APPEALS
DECISION
DATED AND FILED

February 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2019AP249

STATE OF WISCONSIN

Cir. Ct. No. 2013CV343

IN COURT OF APPEALS
DISTRICT III

LAVERNE J. SPRINGER, INDIVIDUALLY, AS PARTNER IN SPRINGER BROS. A/K/A SPRINGER BROS., A PARTNERSHIP, AND AS SHAREHOLDER IN W-R-L SPRINGER FARMS, INC.,

    PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

  V.

SPRINGER BROS. (A PARTNERSHIP) C/O ROBERT J. SPRINGER, PARTNER,

    DEFENDANT,

ROBERT J. SPRINGER, INDIVIDUALLY, AS PARTNER IN SPRINGER BROS. A/K/A SPRINGER BROS., A PARTNERSHIP, AND AS SHAREHOLDER IN W-R-L SPRINGER FARMS, INC., AND AS TRUSTEE OF THE ROBERT J. SPRINGER REVOCABLE TRUST U/A JANUARY 30, 2003, AND AS TRUSTEE OF THE WILLIAM M. SPRINGER REVOCABLE TRUST U/A JANUARY 30, 2003 AND AS BENEFICIARY OF THE WILLIAM M. SPRINGER REVOCABLE TRUST U/A JANUARY 30, 2003 AND W-R-L SPRINGER FARMS, INC., A WISCONSIN CORPORATION C/O ROBERT J. SPRINGER, REGISTERED AGENT,

    DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Marathon County:  MICHAEL K. MORAN, Judge.  *Affirmed in part; reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  This appeal and cross-appeal involve a dispute between two brothers—LaVerne and Robert Springer—who formerly operated a family farm together through a partnership known as Springer Brothers ("the Partnership").[1]  Following a jury trial, the circuit court entered a judgment awarding LaVerne $10,500 in damages for Robert's breach of his fiduciary duty to LaVerne.  After a subsequent bench trial, the court entered a second judgment that dissolved the Partnership; partitioned the Partnership's real estate; and awarded LaVerne an additional $13,020.50 in damages for income the court found Robert diverted from the Partnership.

¶2      We conclude the circuit court erred when it determined the Partnership had obtained sole title, via adverse possession, to certain real estate partially owned by two of LaVerne and Robert's siblings.  The court was required, but failed, to determine whether the Partnership's use of the land was hostile, open and notorious, exclusive, and continuous.  We therefore reverse and remand for the court to make that determination.  If the court determines the Partnership did

---

[1] Because LaVerne and Robert share a surname, we refer to them—and to other members of the Springer family—by their first names throughout the remainder of this opinion.

not obtain sole title to the relevant property via adverse possession, it must reconsider the manner in which it partitioned the Partnership's real estate.

¶3     We further conclude that the circuit court erred by considering anew during the bench trial items of damages that the jury had already considered during the jury trial. We therefore reverse the court's award to LaVerne of $13,020.50 for LaVerne's share of the proceeds from the sales of timber harvested from the Partnership's land. We affirm in all other respects.

## BACKGROUND

¶4     The Springer family farm is located in the Town of Emmet in Marathon County. Title to the farm real estate passed to the family matriarch, Blanche, following her husband's death. In March 1977, Blanche executed a quitclaim deed transferring title to the farm real estate to four of her eight children—Robert, LaVerne, William, and Delores—as tenants in common. Before that time, William, Robert, and LaVerne had purchased various parcels of farmland and hunting land surrounding the family farm as either joint tenants or tenants in common. In addition, in 1960, William, Robert, LaVerne, and a fourth brother—Leonard—had purchased an eighty-acre parcel of farmland to the southeast of the family farm as tenants in common.

¶5     In around 1980, William, Robert, and LaVerne formed the Partnership to operate the family farm, with each of the three brothers having an equal one-third interest in the Partnership. Neither Leonard nor Delores had any interest in the Partnership. On March 19, 1980, William, Robert, and LaVerne executed a quitclaim deed purporting to transfer all of the farm real estate and hunting land to the Partnership. Delores and Leonard each had an interest in a portion of the transferred real estate, and at no time did they transfer those

3

interests to the Partnership. In 1984, William, Robert, and LaVerne purchased an additional 160 acres of farmland to the north of the family farm, taking title to the land "as equal co-partners, d/b/a Springer Bros."

¶6    It appears undisputed that after the formation of the Partnership in 1980, William, Robert, LaVerne, and Delores continued to live and work on the family farm, and Leonard worked there.[2]   In 1987, LaVerne ceased living and working on the farm. The parties dispute whether LaVerne left voluntarily or was forced out by William and Robert. Although LaVerne was no longer living or working on the farm, he retained his one-third interest in the Partnership.

¶7    In 1990, William, Robert, and LaVerne transferred all of the Partnership's personal property to a new entity—W-R-L Springer Farms, Inc. ("the Corporation"). Each brother received one-third of the Corporation's stock. William and Robert then began routing all operating income and expenses for the farming business through the Corporation. The Partnership's only asset after 1990 was the real estate, and it did not maintain a checking account after the Corporation was created. When portions of the real estate were sold, the proceeds were split in thirds and distributed to William, Robert, and LaVerne.

¶8    Delores died in 2006, and William died in 2009. Robert alleges on appeal that following William's death, his "interest in the Corporation and the partnership passed to Robert … by operation of his trust." However, the only record citation Robert provides in support of that assertion is to a deed, dated May 31, 2011, transferring real estate to Robert from the William J. Springer

---

[2] Leonard apparently lived on an adjacent parcel.

Revocable Trust. Robert also asserts that Delores's "interest" passed to him on her death, and he contends that Leonard "likewise voluntarily transferred his farming land interest to Robert" in September 2015. Robert does not provide any record citations in support of these assertions.[3]

¶9 In November 2011, a barn on the Partnership's property was destroyed in a fire. Robert received insurance proceeds of $75,000 for the loss of the barn and deposited that money in the Corporation's account. Property owned by the Partnership was also logged on several occasions, and the proceeds from the timber sales were paid to the Corporation.

¶10 On April 30, 2013, LaVerne filed the instant lawsuit naming Robert, the Partnership, and the Corporation as defendants. As relevant to this appeal, LaVerne asserted claims for dissolution of the Partnership and partition of its real estate. LaVerne later filed a second amended complaint asserting an additional

---

[3] Appellate briefs must include citations to the parts of the appellate record relied upon. *See* WIS. STAT. RULE 809.19(1)(d), (1)(e), (3)(a)2., (4)(b) (2017-18). Our review of the issues raised in this appeal and cross-appeal has been hampered significantly by the failure of both Robert and LaVerne to provide adequate record citations. Robert's and LaVerne's briefs include inaccurate record citations, general citations to multi-page documents without citing specific page numbers, and factual assertions with no supporting record citations whatsoever.

We remind counsel that this is a high-volume court. *See* ***State v. Bons***, 2007 WI App 124, ¶21, 301 Wis. 2d 227, 731 N.W.2d 367. Compliance with the Rules of Appellate Procedure, particularly those rules regarding accurate record citations, is not optional and is essential to the timely performance of our duties. *See* ***Keplin v. Hardware Mut. Cas. Co.***, 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964). We have no duty to scour the record to review arguments that are not accompanied by adequate record citations. ***Roy v. St. Lukes Med. Ctr.***, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256. We admonish counsel for both Robert and LaVerne that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

claim that Robert had breached his fiduciary duty to LaVerne. Robert then asserted counterclaims against LaVerne for breach of fiduciary duty, offset, and unjust enrichment. A referee was subsequently appointed to provide a report to the circuit court regarding LaVerne's partition claim.

¶11    In November and December 2015, the circuit court held a five-day jury trial regarding the parties' claims for breach of fiduciary duty and unjust enrichment. The jury ultimately found that Robert had breached his fiduciary duty to LaVerne and awarded LaVerne $10,500 in damages. Conversely, the jury found that LaVerne had not breached his fiduciary duty to Robert. However, the jury found that LaVerne had been unjustly enriched as a result of Robert's work for, and provision of loans to, the Corporation. It awarded Robert $15,106 in damages on his unjust enrichment claim. At Robert's request, the court agreed to "hold" the judgment resulting from the jury trial and not allow docketing of the judgment until the partition matter had been resolved.

¶12    LaVerne filed a postverdict motion asking the circuit court to change the jury's answer to Question 10 on the special verdict—regarding whether LaVerne had been unjustly enriched—from "Yes" to "No" and to change the jury's answer to Question 11—regarding damages for the unjust enrichment—to zero. In June 2016, the court entered an order granting that motion. The court stated it would treat the jury's answers to Questions 10 and 11 "as advisory for purposes of shaping a remedy to the partition cause of action, which still remains before the Court."

¶13    Despite its earlier agreement to "hold" the judgment resulting from the jury trial until the partition matter was resolved, on August 8, 2016, the circuit court entered a judgment awarding LaVerne $10,500—the amount of damages

awarded by the jury on LaVerne's breach of fiduciary duty claim. Costs were taxed against Robert, resulting in a total judgment of $17,771.66 in LaVerne's favor. However, during a subsequent hearing on February 10, 2017, the court granted Robert's motion to hold open the issue of costs pending resolution of the remaining issues in the case. On April 14, 2017, the court entered a written order stating the August 8, 2016 judgment "shall be modified to include only that amount which was awarded by the jury." The order further stated that the court "reserve[d] the right to review the assessment of taxable court costs and attorney's fees at the final hearing in this matter."

¶14 The circuit court held a bench trial regarding the remaining issues in the case in April and August 2017. The court ultimately entered a written "Decision Following Equity Trial" on January 29, 2018, which addressed "the issues related to winding up the Springer Brothers partnership: partitioning the land and awarding [LaVerne] his share of any partnership income."

¶15 As to the partition claim, the circuit court began by addressing Robert's argument that "the partnership property [could not] simply be divided into thirds, with one third awarded to LaVerne" because the property "was not wholly owned by the partnership." Specifically, Robert asserted that Leonard and Delores "had originally owned interests in the property, and that he now personally owns their interests."

¶16 The circuit court rejected Robert's argument for two reasons. First, it noted that Robert's argument regarding the ownership of the property was contrary to his answer to LaVerne's original complaint, in which he admitted that all interested parties who might claim an interest in the property had been named as parties. Second, the court concluded the evidence introduced at the bench trial

supported LaVerne's argument that even if Leonard and Delores at one point had interests in the property, "the partnership acquired those interests by adverse possession under color of title," pursuant to WIS. STAT. §§ 893.26 and 893.27.

¶17    Robert argued the circuit court could not rely on adverse possession for three reasons, each of which the court rejected. First, the court rejected Robert's assertion that it could not consider adverse possession because LaVerne had not pled an adverse possession claim. The court reasoned the absence of an adverse possession claim in LaVerne's pleadings was "hardly surprising," given that Robert had "originally asserted that the property was owned solely by the partnership." The court further observed that, regardless of the pleadings, the issue of adverse possession had been "fully briefed and argued by both sides." Accordingly, the court determined it was appropriate to "treat the pleadings as having been amended to conform to the evidence … under WIS. STAT. § 802.09(2)."

¶18    The circuit court next rejected Robert's argument that LaVerne lacked standing to assert an adverse possession claim because any such claim "would need to be brought by the partnership." The court reasoned that although LaVerne "could not sue in his own name to vindicate a right possessed by the partnership," he could "bring a derivative action on the partnership's behalf."

¶19    The circuit court also rejected Robert's argument that there was no proof the Partnership's possession of the relevant property was hostile, open and notorious, and exclusive. The court reasoned that for purposes of adverse possession under color of title, "necessary notice of hostile intent [is] provided by the recorded instrument."

¶20 Having rejected Robert's argument that the relevant property was not wholly owned by the Partnership, the circuit court concluded the property could be "divided into thirds, with one going to LaVerne and two to Robert." The court then adopted the referee's recommendation regarding the physical division of the property, which resulted in Robert receiving property worth $1,495,000 and LaVerne receiving property worth $734,000. The court observed that the division of the property would require a survey, and it adopted the referee's recommendation that Robert obtain and pay for the survey and that LaVerne reimburse him for one-third of the cost. The court further ordered that Robert and LaVerne would "equally share the cost of the referee."

¶21 The circuit court then addressed the parties' arguments regarding the Partnership's income. It concluded the Partnership had "virtually no income after the corporation was formed" because "all of the farm's business was run through the corporation." The court acknowledged that the Corporation did not pay the Partnership for its use of the land, but it explained: "[G]iven that the partnership and the corporation both consisted of the same three brothers, that arrangement made sense." The court refused to "create rental contracts where none existed and order that the corporation reimburse the partnership so that one-third of that money can go to LaVerne in this action." Instead, the court noted that the money "remain[ed] in the corporation," of which LaVerne was a shareholder.

¶22 The circuit court next addressed LaVerne's argument that he was entitled to a portion of the insurance proceeds from the destruction of the barn. It acknowledged that the barn was owned by the Partnership, but it also observed that the barn was "part of the farm operation, which was run through the corporation." The court concluded, "Because the insurance proceeds … were put

9

back into the corporation, and were used by the corporation in the operation of the farm, those proceeds do not qualify as income of the partnership."

¶23 The circuit court concluded, however, that the proceeds from the timber sales did qualify as partnership income. The court explained that income "was derived directly from the land on which the trees had grown" and was "an income stream that was distinct from the operation of the farm." Accordingly, the court determined LaVerne was entitled to one-third of the proceeds from the timber sales.

¶24 After considering numerous posttrial motions, the circuit court entered a final judgment on December 17, 2018. The judgment dissolved the Partnership, partitioned the Partnership's real property, and awarded LaVerne $13,020.50 for his share of the proceeds from the timber sales. The judgment also specified that no party was entitled to an award of attorney fees or costs. Robert now appeals, and LaVerne cross-appeals.

## DISCUSSION

### I. Robert's appeal

#### A. Adverse possession

¶25 On appeal, Robert first argues the circuit court erred by concluding that Delores's and Leonard's interests in the real estate at issue in this case were extinguished by the Partnership's adverse possession of the property. As an initial matter, Robert again asserts that the issue of adverse possession was not properly before the court because LaVerne did not plead an adverse possession claim. However, as the court noted, LaVerne's original complaint alleged that "all interested parties have been named in this action who may claim an interest in" the

10

relevant property. Robert admitted that allegation in his answer. Thus, we agree with the court that it is "hardly surprising" that LaVerne's pleadings did not include an adverse possession claim, as he had no notice that Robert would subsequently claim others had an interest in the property.

¶26 Moreover, as the circuit court aptly observed, the issue of adverse possession was ultimately "fully briefed and argued by both sides," despite the absence of an adverse possession claim in LaVerne's pleadings. Under these circumstances, the court deemed it appropriate to "treat the pleadings as having been amended to conform to the evidence" under WIS. STAT. § 802.09(2). On appeal, Robert does not develop any argument that the court erroneously exercised its discretion by treating the pleadings as amended. *See Soma v. Zurawski*, 2009 WI App 124, ¶13, 321 Wis. 2d 91, 772 N.W.2d 724 ("The decision to allow an amendment is generally a discretionary call for the circuit court."). Failure to address the grounds on which the circuit court ruled constitutes a concession of the ruling's validity. *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

¶27 Robert also argues LaVerne was required, but failed, to raise adverse possession as an issue during the 2015 jury trial. He does not cite any legal authority, however, supporting his assertion that an adverse possession claim must be tried to a jury. To the contrary, our case law is replete with instances in which adverse possession claims were tried to courts, rather than juries. *See, e.g.*, *Wilcox v. Estate of Hines*, 2014 WI 60, ¶11, 355 Wis. 2d 1, 849 N.W.2d 280; *Chandelle Enters., LLC v. XLNT Dairy Farm, Inc.*, 2005 WI App 110, ¶5, 282 Wis. 2d 806, 699 N.W.2d 241. Moreover, in this case, it makes sense that the issue of adverse possession was not tried to the jury because it related to LaVerne's partition claim, which was reserved for consideration during the bench trial.

¶28    Robert also argues LaVerne lacked standing to assert that the Partnership had acquired sole title to the relevant property via adverse possession. The circuit court rejected this argument, observing that while LaVerne "could not sue in his own name to vindicate a right possessed by the partnership, LaVerne could bring a derivative action on the partnership's behalf." On appeal, Robert does not dispute, as a general matter, that a partner may bring a derivative action on behalf of the partnership. Instead, he contends that LaVerne could not bring a derivative action under the circumstances presented here because Robert, the other living partner, did not consent to the suit. Robert does not, however, cite any binding legal authority in support of the proposition that LaVerne needed his consent to initiate a derivative action.

¶29    Robert next argues that even if the issue of adverse possession was properly pled and raised, LaVerne failed to prove that the Partnership adversely possessed the relevant property so as to extinguish Delores's and Leonard's ownership interests. When reviewing a circuit court's decision regarding adverse possession, we accept the court's factual findings unless they are clearly erroneous, but we independently review whether the facts are sufficient to establish adverse possession. *Wilcox*, 355 Wis. 2d 1, ¶15.

¶30    Here, the circuit court concluded LaVerne had established the Partnership's adverse possession of the relevant property under both WIS. STAT. §§ 893.26 and 893.27. Section 893.26 permits a party to acquire title to real property by adversely possessing the property for an uninterrupted period of ten years. *See* § 893.26(1). As relevant to this case, property is held adversely under § 893.26 if: (1) the possessor or his or her predecessor in interest "originally entered into possession of the real estate under a good faith claim of title, exclusive of any other right, founded upon a written instrument as a conveyance of

12

the real estate"; (2) the written instrument was recorded within thirty days; and (3) the possessor "is in actual continued occupation of all or a material portion of the real estate described in the written instrument … under claim of title, exclusive of any other right." Sec. 893.26(2). For purposes of § 893.26, "it is presumed, unless rebutted, that entry and claim of title are made in good faith." Sec. 893.26(5).

¶31 WISCONSIN STAT. § 893.27 incorporates by reference the requirements set forth in WIS. STAT. § 893.26 for obtaining title by adverse possession founded on a written instrument. *See* § 893.27(2). However, it shortens the required period of adverse possession to seven years where the possessor or his or her predecessor in title paid all real estate taxes due on the property for the seven-year period after the original entry. *See* § 893.27(1)-(2).

¶32 In this case, it is undisputed that on March 19, 1980, William, Robert, and LaVerne executed a quitclaim deed purporting to transfer all of the real estate at issue in this case to the Partnership. The deed was recorded the following day. It is further undisputed that the Partnership farmed the property for the next ten years. It is presumed that the Partnership's entry into and claim of title to the property were made in good faith, *see* WIS. STAT. § 893.26(5), and Robert does not point to any evidence that would rebut that presumption. Moreover, the circuit court found that the Partnership paid real estate taxes on the property from 1980 until 1990, and Robert does not argue that finding is clearly erroneous.

¶33 The circuit court concluded that the facts summarized in the preceding paragraph were sufficient to establish adverse possession under WIS. STAT. §§ 893.26 and 893.27. Robert argues the court erred, however, because

LaVerne failed to establish that the Partnership's possession of the property was hostile, open and notorious, and exclusive as to Delores's and Leonard's interests. The court rejected Robert's argument, reasoning that for purposes of adverse possession under color of title, "necessary notice of hostile intent [is] provided by the recorded instrument." In support of that proposition, the court relied on *Sydnor v. Palmer*, 29 Wis. 226, 250 (1871), which states:

> It may be said to be a general rule, that, if one enters under color of title, he is presumed to enter claiming according to the extent of his title. Where one enters upon land under a recorded deed, which purports to give him a complete title, his possession becomes *adverse* to all the world.

¶34 The circuit court's decision that LaVerne was not required to prove the Partnership's possession was hostile, open and notorious, and exclusive runs afoul of a more recent Wisconsin Supreme Court case—*Perpignani v. Vonasek*, 139 Wis. 2d 695, 408 N.W.2d 1 (1987). There, the court stated that "[a]n adverse claimant relying on the color of title ten year statute must prove the character of the possession in the same manner as the claimant relying on the twenty year statute." *Id.* at 735 n.19. The court further stated:

> While color of title draws the constructive possession of the whole premises to the actual possession of a part only, and is evidence of the nature of the entry and of the extent and boundaries of the possession claimed, it is not of itself evidence of adverse possession, and it does not necessarily follow that adverse possession can be proved by less evidence when the entity is under color of title than when it is not. *The existence of color of title does not dispense with the necessity for acts of adverse possession.*

*Id.* (quoting 3 AM. JUR. 2D *Adverse Possession* § 145 (1986) (footnotes omitted; emphasis in *Perpignani*)).

¶35     *Perpignani* establishes that even in a case involving a claim of adverse possession under color of title, the claimant must establish the traditional, common-law elements of adverse possession—i.e., physical possession of the property that was hostile, open and notorious, exclusive, and continuous.  *See Wilcox*, 355 Wis. 2d 1, ¶20.  Whether a claimant's possession was hostile, open and notorious, exclusive, and continuous are questions of fact.  *Harwick v. Black*, 217 Wis. 2d 691, 703, 580 N.W.2d 354 (Ct. App. 1998).  The circuit court did not make any findings on these issues.  Robert argues that the evidence does not support such findings as to Delores's and Leonard's interests in the property.  Because we are not a fact-finding court, *see id.*, we must remand to the circuit court to determine whether the Partnership's possession of the relevant real estate was hostile, open and notorious, exclusive, and continuous for the requisite time period.

¶36     If the circuit court finds on remand that the Partnership's possession of the relevant property was hostile, open and notorious, exclusive, and continuous, then its ruling regarding adverse possession and its partition of the Partnership's property will stand.  If, however, the court determines that the Partnership's possession of the relevant property was not hostile, open and notorious, exclusive, and continuous, then LaVerne's contention that the Partnership obtained sole title to the property via adverse possession must fail.

¶37     In that case, the circuit court must determine how many acres of the property were partially owned by Delores and by Leonard and the locations of that acreage.  The court must then determine whether Delores's and Leonard's interests in the property have passed to Robert, as Robert asserts on appeal.  Once those determinations are made, the court will be able to determine what property is owned by the Partnership, and what property is owned by Robert, Delores, and/or

Leonard individually. The court can then partition the property owned by the Partnership. The court will also have to determine the parties' responsibility for any further costs, including survey costs and any additional referee costs, if the matter is again referred to a referee.

### B. Sufficiency of the evidence regarding LaVerne's breach of fiduciary duty claim

¶38 Robert also argues on appeal that there was insufficient evidence to support the jury's verdict on LaVerne's breach of fiduciary duty claim. To prevail on a claim for breach of fiduciary duty, a plaintiff must establish three elements: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach caused the plaintiff damages. ***Berner Cheese Corp. v. Krug***, 2008 WI 95, ¶40, 312 Wis. 2d 251, 752 N.W.2d 800. In this case, it is undisputed that Robert owed LaVerne a fiduciary duty in his capacity as a partner in the Partnership. Robert argues, however, that the evidence at the jury trial was insufficient to establish that he breached his fiduciary duty to LaVerne and that LaVerne sustained damages as a result of the breach.

¶39 We review a jury's verdict narrowly and will sustain the verdict "if there is any credible evidence to support it." ***Morden v. Continental AG***, 2000 WI 51, ¶38, 235 Wis. 2d 325, 611 N.W.2d 659. In making this assessment, we consider the evidence in the light most favorable to the verdict. ***Id.***, ¶39. We search the record for credible evidence that sustains the jury's verdict, and if the evidence gives rise to more than one reasonable inference, we accept the inference the jury reached. ***Id.*** As long as there is credible evidence to support the jury's verdict, we must affirm, even if the record contains contradictory evidence that is stronger and more convincing. ***Id.***

¶40    Applying this standard to the instant case, we conclude the evidence was sufficient to support the jury's verdict on LaVerne's breach of fiduciary duty claim.  As to whether Robert breached his fiduciary duty to LaVerne, evidence was introduced at trial that Robert caused money that should have been paid to the Partnership to instead be paid to the Corporation—specifically, the insurance proceeds from the barn fire and the proceeds from the sales of timber harvested from the Partnership's property.  Evidence was also introduced that Robert allowed the Corporation to use the Partnership's land without paying rent and permitted certain individuals to live on the Partnership's property rent-free.  This evidence was sufficient to support a finding that Robert breached his fiduciary duty to LaVerne by directing monies that should have been paid to the Partnership to the Corporation and by allowing the Corporation and others to use the Partnership's property without compensation.  *See* WIS. STAT. § 178.18(1) (2013-14).[4]

¶41    Evidence was also introduced at trial to support the jury's determination that Robert's breach caused LaVerne damages.  Had the fire insurance and timber sale proceeds been paid to the Partnership, Robert would have been entitled to one-third of those amounts.  He also would have been entitled to one-third of any rent paid to the Partnership by the Corporation or by any individuals who lived on the Partnership's property.  LaVerne argued during the jury trial that he was entitled to $2550 for the timber sales, $25,000 for the fire insurance proceeds, and $58,666.67 for the Corporation's use of the Partnership's land.  In addition, LaVerne's expert witness testified that the rental value for the

---

[4] It is undisputed that the 2013-14 version of WIS. STAT. ch. 178 is applicable in this case.  Chapter 178 was repealed and recreated in 2016.  *See* 2015 Wis. Act 295, § 18.

three houses on the farm totaled $16,200 per year. Under these circumstances, LaVerne produced evidence of sufficient damages to support the jury's award of $10,500.

¶42 Robert argues LaVerne failed to prove that he sustained any damages because LaVerne had one-third interests in both the Partnership and the Corporation, and "[e]very dollar which [LaVerne] insists he did not receive … was accounted for and enhanced [LaVerne's] value in the Corporation in an equal and offsetting amount." However, Robert does not cite any evidence in the appellate record that supports this assertion. We need not consider arguments that are unaccompanied by adequate record citations. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256. We therefore reject Robert's argument that the evidence at trial was insufficient to establish that LaVerne suffered damages as a result of Robert's breach of fiduciary duty.

### C. Authority to hold separate trials

¶43 Robert also argues the circuit court lacked authority to hold separate trials on issues arising from the same cause of action. Specifically, Robert argues the court erred by first holding a jury trial on LaVerne's breach of fiduciary duty claim and later holding a bench trial, during which the court considered the same alleged breaches of fiduciary duty in the context of determining whether additional money should be awarded to LaVerne in the dissolution of the Partnership.

¶44 We reject Robert's argument that the circuit court lacked authority to hold separate trials in this case. The jury trial addressed the parties' tort claims, including LaVerne's claim against Robert for breach of fiduciary duty. The bench trial addressed equitable issues surrounding the dissolution of the Partnership and

the partition of its property. These were distinct issues properly addressed during separate trials.

¶45   We conclude, however, that the circuit court erred when it reconsidered during the bench trial items of damages that had already been addressed by the jury. To explain, during the jury trial, LaVerne argued that Robert had breached his fiduciary duty in four ways: (1) by causing the fire insurance proceeds to be paid to the Corporation, rather than the Partnership; (2) by causing the proceeds of the timber sales to be paid to the Corporation, rather than the Partnership; (3) by allowing the Corporation to use the Partnership's property without paying rent; and (4) by allowing certain individuals to live on the Partnership's property rent-free. The jury found that Robert had breached his fiduciary duty to LaVerne, and it awarded LaVerne $10,500 in damages. However, the special verdict did not ask the jury to specify how Robert had breached his fiduciary duty or to itemize the damages it awarded for that claim.

¶46   Thereafter, during the bench trial, the circuit court considered the same alleged conduct by Robert in determining whether, in the context of the dissolution of the Partnership, LaVerne was entitled to an award for "his share of any partnership income." Specifically, the court considered whether LaVerne was entitled to recover one-third of: (1) the rent that should have been charged for the Corporation's use of the Partnership's land; (2) the fire insurance proceeds; and (3) the proceeds from the timber sales. The court concluded LaVerne was not entitled to recover any portion of the rent or fire insurance proceeds, but he was entitled to one-third of the proceeds from the timber sales. The court therefore awarded LaVerne $13,020.50.

19

¶47    When dissolving the Partnership and distributing its income, there was no legal basis for the circuit court to consider anew assets that were not actually present in the Partnership at the time of dissolution and that the jury had already considered in determining whether Robert breached his fiduciary duty to LaVerne.  Moreover, as Robert correctly observes, given that the special verdict did not ask the jury to itemize the damages it awarded on LaVerne's breach of fiduciary duty claim, we have no way of knowing whether the court's award of $13,020.50 following the bench trial duplicated the jury's prior award of $10,500.  Under these circumstances, the court's award to LaVerne of $13,020.50 must be reversed.

### D.  Unjust enrichment

¶48    As noted above, Robert asserted a counterclaim against LaVerne for unjust enrichment.  At the jury trial, Robert argued LaVerne had been unjustly enriched because he had left the farm in 1987, and since that time Robert had continued working on the farm without taking any wages and had also loaned money to the Corporation.  As damages, Robert asked the jury to award him $371,808.54 for the loans he made the Corporation and $350,000 in wages.  The jury ultimately found that LaVerne was unjustly enriched "through the loans made by Robert Springer and the work performed by Robert Springer to [the Corporation]," and it awarded Robert $15,106 in damages.  However, the circuit court later granted LaVerne's postverdict motion to change the jury's answer to Question 10 on the special verdict—regarding whether LaVerne had been unjustly enriched—from "Yes" to "No" and to change the jury's answer to Question 11—regarding damages for the unjust enrichment—to zero.

¶49    Robert now argues that the circuit court erred by granting LaVerne's motion to change the jury's answers.  A party may move the circuit court to change an answer in the jury's verdict "on the ground of insufficiency of the evidence to sustain the answer."  WIS. STAT. § 805.14(5)(c).  The court may grant the motion only if it "is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."  Sec. 805.14(1).  We will reverse a circuit court's decision to change an answer in the verdict only if that decision was "clearly wrong."  ***Best Price Plumbing, Inc. v. Erie Ins. Exch.***, 2012 WI 44, ¶44, 340 Wis. 2d 307, 814 N.W.2d 419 (citation omitted).  A decision to change the jury's answer is clearly wrong if there is any credible evidence that supports the answer.  ***Id.***

¶50    To establish a claim for unjust enrichment, a plaintiff must prove three elements: (1) that the plaintiff conferred a benefit upon the defendant; (2) that the defendant had an appreciation or knowledge of the benefit; and (3) that the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value.  ***Buckett v. Jante***, 2009 WI App 55, ¶10, 316 Wis. 2d 804, 767 N.W.2d 376.  In his postverdict motion, LaVerne argued the evidence at trial was insufficient to establish unjust enrichment because there was "no proof of any benefit conferred upon [LaVerne] by [Robert]" and "no evidence that [LaVerne] had any knowledge or appreciation of any benefit from [Robert]."  The circuit court agreed, concluding there was "not credible relevant evidence to conclude [LaVerne] was unjustly enriched by [Robert]."

¶51    On appeal, Robert does not present a developed argument that the circuit court was "clearly wrong" when it concluded the evidence was insufficient

to support the jury's answers to the verdict questions regarding unjust enrichment. Instead, he merely assets that LaVerne "benefitted from the uncompensated work performed by [Robert] in operating and managing the farm partnership" and that "[s]ufficient evidence was presented in the record at the jury trial to support the jury's verdict as to unjust enrichment." Robert does not, however, cite any portion of the record that would support a finding that his actions in working for the Corporation without pay and loaning money to the Corporation benefitted LaVerne, personally, rather than the Corporation. Robert also fails to explain how the jury could have found that LaVerne was aware of the alleged benefit Robert conferred upon him, as he does not cite any evidence that LaVerne was aware of the loans or knew that Robert was working for the Corporation without pay. We need not consider arguments that are undeveloped or unsupported by citations to the appellate record. *Roy*, 305 Wis. 2d 658, ¶10 n.1; *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Accordingly, we reject Robert's argument that the court erred by changing the jury's answers to the verdict questions regarding unjust enrichment.

### E. Date of dissolution

¶52 Robert's final argument on appeal is that the circuit court erred by allowing LaVerne to assert claims for adverse possession and breach of fiduciary duty because those claims were "rooted in [LaVerne's] status as a partner," but the dissolution of the Partnership began in 1987 when LaVerne left the farm. Robert relies on *Estate of Matteson v. Matteson*, 2008 WI 48, ¶24, 309 Wis. 2d 311, 749 N.W.2d 557, which states that "[w]hen a partner retires or dies, the partnership is dissolved." *Estate of Matteson* further provides that an "exiting partner" has two options upon initiating a partnership dissolution: "(1) (continuation) to permit the business to continue and claim his or her interest in the dissolution value as a

22

creditor, or (2) (wind-up) to force the dissolved business to wind up and take his or her part of the proceeds." *Id.*, ¶25. Robert argues that in this case, the Partnership "had been in a long wind up" since LaVerne's departure in 1987.

¶53 We do not find Robert's argument in this regard persuasive. Even if the dissolution of the Partnership began in 1987, as Robert claims, "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." WIS. STAT. § 178.25(2) (2013-14). Robert cites no legal authority supporting the proposition that a party's rights as a partner cease to exist during the wind-up period. Moreover, he does not explain why he believes an exiting partner cannot assert a claim for breach of fiduciary duty based on actions taken by the remaining partners during the wind-up period. He also fails to explain why the Partnership—which continued to exist even after LaVerne left the farm in 1987—could not adversely possess the real estate owned in part by Delores and Leonard.

¶54 Robert further argues that because the dissolution of the Partnership began in 1987, LaVerne should not have been permitted to argue that the Corporation should have paid rent to the Partnership for the use of its real estate. He contends this is a "profits attributable" claim, which is only allowed when the exiting partner consents to a continuation of the partnership. *See* WIS. STAT. § 178.37 (2013-14). We disagree. Even assuming that a wind up of the Partnership's affairs began in 1987, it is undisputed that the Partnership continued to own the farm property at all times relevant to this case. Robert does not explain why the Corporation should not have been required to compensate the Partnership for its use of the Partnership's land during the wind-up period.

¶55    Finally, Robert argues for the first time in his reply brief that because the dissolution of the Partnership began in 1987, the applicable six-year statute of limitations barred LaVerne's claim for a partnership accounting. We need not address arguments raised for the first time in a reply brief, and we decline to do so here. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

## II. LaVerne's cross-appeal

### A. *Modification of judgment to remove costs*

¶56    In his cross-appeal, LaVerne first argues that the circuit court erred by modifying the August 8, 2016 judgment—which was entered following the jury trial—to remove the award of costs in LaVerne's favor. LaVerne contends the court lacked authority to remove the costs because Robert did not file a motion to modify the judgment under WIS. STAT. § 806.07.

¶57    We reject LaVerne's argument that the circuit court erred by removing the award of costs from the August 8, 2016 judgment. During a hearing on February 26, 2016—long before the August 8, 2016 judgment was entered—Robert asked the court to "hold" the judgment resulting from the jury trial and not allow docketing of the judgment until the partition matter had been resolved. The court agreed to do so, as long as holding the judgment would not result in a loss of jurisdiction. Nevertheless, in late July 2016—approximately five months later—LaVerne submitted a proposed judgment and bill of costs to the court. The court signed the judgment on August 8, 2016, and costs were taxed in the amount of $7271.66.

¶58    Robert subsequently filed motions to stay enforcement of the August 8, 2016 judgment and for relief from that judgment under WIS. STAT. § 806.07.  The circuit court denied Robert's motion to stay enforcement of the judgment during a hearing on February 10, 2017.  However, the court agreed with Robert that it would be appropriate to "hold open" the issue of costs, pending the resolution of the remaining issues in the case.  The court therefore entered a written order removing the award of costs from the August 8, 2016 judgment and stating that the court "reserve[d] the right to review the assessment of taxable court costs and attorney's fees at the final hearing in this matter."  On this record, we cannot conclude that the court lacked authority to remove the costs awarded in the August 8, 2016 judgment or that it otherwise erroneously exercised its discretion by doing so.

### B. Surveying fees, referee's fees, and reasonable compensation for winding up the Partnership

¶59    LaVerne next argues that the circuit court erred in its treatment of certain expenses.  As noted above, in its written decision following the bench trial, the circuit court ordered that Robert "obtain and pay for" the survey needed to partition the Partnership's real estate and that LaVerne reimburse Robert "for one-third the cost of that survey."  The court further ordered that the parties would "equally share the cost of the referee."  LaVerne subsequently filed a motion asking the court to order that Robert and the other defendants:  (1) pay the entirety of the surveying fees; and (2) pay the referee's fees and reimburse LaVerne for amounts he had previously paid for the referee's services.

¶60    The circuit court considered LaVerne's motion at a hearing on March 21, 2018.  It rejected LaVerne's argument that the defendants should be required to pay the entirety of the surveying fees under WIS. STAT. § 842.16, and it

reiterated that Robert would be required to pay two-thirds of those fees and LaVerne would pay one-third. As for LaVerne's argument regarding the referee's fees, the parties confirmed for the court that each side had already paid one-half of those fees. The court then denied LaVerne's request that it order the defendants to reimburse LaVerne for his share of the referee's fees.

¶61     On appeal, LaVerne again argues that the defendants should have been required to pay the surveying expenses and referee's fees in their entirety. We disagree. WISCONSIN STAT. § 842.09 provides that in a partition action, "[t]he referee's expenses, including those of a surveyor and assistants, shall be subject to the approval of the court and, with the compensation allowed by the court for the referee's services, shall be paid by the plaintiff and allowed as part of the costs to be taxed." WISCONSIN STAT. § 842.16, in turn, provides that the judgment of partition "shall adjudge that each of the parties, other than the plaintiff, pay a proportion of the costs of the proceedings."

¶62     Contrary to LaVerne's assertion, the plain language of these statutes does not require a circuit court to order the defendants in a partition action to pay the entirety of any referee's fees and surveying expenses. Instead, when read together, the statutes provide that: (1) the plaintiff is to pay the referee's fees and surveying expenses upfront; and (2) the partition judgment shall require all other parties to reimburse the plaintiff for a proportion of those expenses.

¶63     The circuit court did not follow the letter of the statutes in this case. Rather than ordering LaVerne to pay the relevant expenses upfront and then requiring the defendants to reimburse LaVerne for a proportion of those expenses, the court simply ordered the parties to divide the expenses in the first instance. However, any error in that regard was harmless. The court's ruling accomplished

the purpose of WIS. STAT. §§ 842.09 and 842.16, in that it apportioned the responsibility for the referee's fees and surveying expenses between the parties. The court's treatment of those expenses therefore provides no basis for reversal. *See* WIS. STAT. § 805.18.

¶64    LaVerne also argues that the circuit court should have awarded him his attorney fees and litigation expenses as "reasonable compensation" for his services in winding up the Partnership. He asserts that no action was taken in that regard until he commenced this lawsuit and he is thus entitled to compensation for his actions. He relies upon WIS. STAT. § 178.15(6) (2013-14), which states that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs."

¶65    "Under the well-established American Rule, parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation. Attorney fees are generally not awarded to the prevailing party in the absence of a statute or enforceable contract providing therefor." ***Elliott v. Donahue***, 169 Wis. 2d 310, 323, 485 N.W.2d 403 (1992). Here, the statute LaVerne relies upon does not expressly provide for an award of attorney fees or litigation expenses, and LaVerne cites no legal authority supporting his argument that the phrase "reasonable compensation for his or her services in winding up the partnership affairs" includes such expenses. Instead, we agree with the circuit court that based upon its plain language, WIS. STAT. § 178.15(6) (2013-14) was not intended to operate as a fee-shifting statute. Moreover, as the court correctly noted, there was no "prevailing party" with respect to LaVerne's partition claim because both sides merely "receiv[ed] their portion of the [Partnership's property] that equitably they should be entitled to." For these reasons, the court properly

declined to award LaVerne his attorney fees and litigation expenses under § 178.15(6) (2013-14).

### C. Rental income

¶66 After the circuit court issued its written decision following the bench trial, LaVerne filed a motion "for an Order determining [that] the Defendants' breached their duty to render partnership information to the Plaintiff [by] failing to provide notice of rental income to the partnership." LaVerne's motion was based on his contention that Jon and Erica Springer had paid William and Robert a total of $25,500 in rent over a five-year period to live on the Partnership's property, and Robert had failed to disclose that rental income to LaVerne, in violation of WIS. STAT. § 178.17 (2013-14). On appeal, LaVerne argues the court "denied the motion in the mistaken belief that the Jon and Erica Springer rent issue had been tried previously and decided, but it was an accounting issue on which the court failed to rule." LaVerne further argues there was not "a shred of evidence that either Jon Springer or Erica Springer were anything but tenants paying Robert $475.00 a month which was never accounted."

¶67 The record belies LaVerne's argument. During the hearing on LaVerne's motion, the circuit court initially stated that it believed the issue of Jon and Erica Springer's rental payments had been addressed during the jury trial. However, the court later stated, "There was testimony back and forth that I had to review and find whether it was credible or not, about whether there was actually any rental income paid or not." LaVerne then asked the court to make a finding as to whether there was "rental income paid based on the testimony of [Jon] Springer and his wife in this last equitable trial." The court responded:

> I'm not sure that you carried the day on that. I don't think there was necessarily rental income paid. There was question about money that went back and forth, whether that was compensation for wages. It's not clear to me whether there was anything paid or not. It was simply not developed during the trial enough for me to say that this was a quid pro quo, you stay there and you pay me rent.
>
> There was plenty of testimony that this was part of a wage that the person was being paid. It was part of a corporate setup where the person would stay somewhere and be part of their wages for working as part of the corporation. So if you want me to make that determination, I've got to be honest with you, I don't think it was proven at trial that there was any type of a rental payment.

¶68    Thus, the record shows the circuit court made a factual finding that the evidence did not establish that Robert received rental payments from Jon and Erica Springer. That finding is not clearly erroneous. *See* WIS. STAT. § 805.17(2). While Jon Springer testified that he paid Robert rent to live on the Partnership's property, Robert testified he was not aware of any such rental payments. When the circuit court acts as the finder of fact, and where there is conflicting testimony, the court is the ultimate arbiter of the witnesses' credibility. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). Robert's testimony supports the court's finding that Robert did not receive rental payments from Jon and Erica Springer, and based on that finding, the court properly denied LaVerne's posttrial motion regarding the alleged rental payments.

**CONCLUSION**

¶69    For the reasons explained above, we reverse the circuit court's judgment as to LaVerne's adverse possession claim and remand for the court to determine whether the Partnership's use of the land partially owned by Delores and Leonard was hostile, open and notorious, exclusive, and continuous. If the court determines the Partnership did not obtain sole title to the relevant property

via adverse possession, it must reconsider the manner in which it partitioned the Partnership's real estate, in the manner set forth above. *See supra*, ¶37. We also reverse the court's award to LaVerne of $13,020.50 for his share of the proceeds from the timber sales. We affirm the court's judgment in all other respects.

¶70     No WIS. STAT. RULE 809.25(1) costs are awarded to any party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.